UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DANELLE HOLLINGSWORTH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12CV1198 JCH |
| | ) | |
| CITY OF ST. ANN, et al., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of St. Ann, St. Ann Police Officer Robert McCallum, Correctional Officer Joseph Mayberry, and Correctional Officer Johnny King's (collectively "Defendants") Motion for Summary Judgment, filed November 12, 2013. (ECF No. 33). The motion is fully briefed and ready for disposition.

## BACKGROUND

On July 21, 2009, Plaintiff Danelle Hollingsworth ("Hollingsworth"), while intoxicated, stole $7.38 worth of wine coolers from a Circle K convenience store in the City of St. Ann. (Complaint ("Compl."), ¶¶ 12, 13; Defendants' Response to Plaintiff's Statement of Uncontroverted Material Facts in Support of Plaintiff's Motion for Summary Judgment on Liability ("Def. Response"), ¶ 10[1]). St. Ann police officers arrested Hollingsworth and brought her to the St. Ann police station. (Compl., ¶¶ 15, 19). Officers brought Hollingsworth into a

---

[1] Plaintiff filed her own Motion for Summary Judgment on Liability on November 12, 2013. (ECF No. 37). The parties have agreed to incorporate their respective statements of uncontroverted material facts in support of their own motions for summary judgment as facts in opposition to the other party's motion. *See* ECF No. 52.

small video monitored processing room. (Id., ¶ 20).[2] Defendant Joseph Mayberry ("Mayberry") brought in a tote, or plastic box, containing an orange jail jumpsuit. (Id., ¶ 21; Plaintiff's Statement of Uncontroverted Material Facts in Support of Plaintiff's Motion for Summary Judgment on Liability ("Plaintiff's Facts"), ¶ 31). Defendant Johnny King ("King") started the booking process, having Hollingsworth remove her personal property from her pockets and hair and fill out paperwork. (Plaintiff's Facts, ¶ 32). Hollingsworth cooperated at this stage, and did not engage in any physically threatening behavior. (Id., ¶ 33).

Hollingsworth sat on a concrete bench in the processing room. (Plaintiff's Facts, ¶ 34). One of the Defendants told Hollingsworth to take her clothes off, including her bra but not including her bottom underwear, and change into the orange jumpsuit. (Id., ¶¶ 37, 38).[3] Hollingsworth sat on the bench while the officers completed their work, and then the officers left the room, closing the door behind them. (Id., ¶¶ 41, 42). Hollingsworth continued to sit on the bench, not changing into the jumpsuit. (Id., ¶ 43; Def. Response, ¶ 43). A female dispatcher monitoring the video feed informed the officers that Hollingsworth was not changing into the jumpsuit. (Plaintiff's Facts, ¶ 44). Defendant Robert McCallum ("McCallum") entered the room with his taser out, and reiterated to Hollingsworth that she had to change into the jumpsuit. (Id., ¶¶ 45, 47). McCallum warned Hollingsworth that if she continued to refuse to change out of her street clothes and into the orange jumpsuit, she would be tased. (Defendants' Statement of Facts, ¶ 4). Hollingsworth waved or pointed her finger at McCallum, saying either something along the lines of "you better not tase me" (Plaintiff Dep. 93:17-24), or "f--- you. I will not do -- I will not

---

[2] The parties dispute whether Hollingsworth was "cussing and belligerent" during the arrest, and/or yelling during the escort to the processing room. (Def. Response, ¶¶ 13, 18, 23).

[3] Hollingsworth maintains she was "leery and scared" at this point, and would have liked a female officer to be present. (Plaintiff's Facts, ¶ 39). Defendants counter she was using profane language, and that at no time did she request that a woman be present. (Def. Response, ¶¶ 39, 40).

change out" (McCallum Dep. 54:14-19). McCallum then left the room, and some time thereafter the dispatcher monitoring the video feed again alerted the officers that Hollingsworth was not changing. (Plaintiff's Facts, ¶¶ 52, 54). McCallum immediately re-entered the processing room and employed his taser, shooting one barb into Hollingsworth's upper chest and one into her shoulder. (Id., ¶¶ 55, 56). McCallum gave Hollingsworth a full five second application of energy through the taser, waited five seconds, and then another five second application of energy, during which Hollingsworth received the full effect of the stun gun. (Id., ¶¶ 58, 62).[4] McCallum testified that between the two tasings he told Hollingsworth to change, and Hollingsworth said "f--- you". (McCallum Dep. 73:24-25).

McCallum testified that he had no fear for his physical safety and health (McCallum Dep. 84:23-25), and in his report said that he deployed his taser because of Hollingsworth's noncompliance. (Defendants' Exh. D). McCallum also testified that he believed it was important that people change into jumpsuits, "[t]o insure safety of themselves and other people in the facility. To search for contraband of any type." (McCallum Dep. 89:14-18).

Hollingsworth filed her original Complaint in this matter on July 3, 2012. (ECF No. 1). In her Third Amended Complaint, filed August 12, 2013, she asserts the following causes of action: a Fourth Amendment violation for excessive force against McCallum, in connection with the tasing (Count I); a Fourth Amendment violation for failure to intervene against King and Mayberry (Count II)[5]; and a *Monell*[6] violation against the City of St. Ann (Count IV).[7] As stated

---

[4] McCallum touched the end of the taser onto Hollingsworth's inner right thigh during the first taser application, and onto her outer right thigh during the second application. (Plaintiff's Facts, ¶¶ 60, 63).

[5] Defendants King and Mayberry were outside the processing room while McCallum went in and out with the taser, and admittedly did nothing to prevent him from tasing Hollingsworth. (Plaintiff's Facts, ¶¶ 70, 75).

[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

above, Defendants filed the instant Motion for Summary Judgment on November 12, 2013, asserting there are no issues of material fact in dispute and Defendants are entitled to judgment as a matter of law. (ECF No. 33.)

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

---

[7] Hollingsworth abandoned her claim for substantive due process violations, as lodged in Count III. (*See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment on Liability ("Plaintiff's Memo in Support"), PP. 5-6).

## DISCUSSION

**I.     Count I - 42 U.S.C. § 1983 Excessive Force Claim Against McCallum**

In their Motion for Summary Judgment, Defendants claim Hollingsworth's 42 U.S.C. § 1983 claim against Officer McCallum is barred by qualified immunity. (Defendants' Memorandum in Support of their Motion for Summary Judgment, PP. 7-11). "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006)). Determining the question of qualified immunity thus involves a two-part inquiry: first, whether the facts shown by Plaintiff demonstrate the deprivation of a constitutional or statutory right, and second, whether that right was clearly established at the time of the deprivation. *LaCross v. City of Duluth*, 713 F.3d 1155, 1157-58 (8th Cir. 2013). "A court may use its discretion as to which of these inquiries it first chooses to address in light of the particular circumstances of the case at hand." *Wommack v. Brown*, 2012 WL 5948922, at *10 (E.D. Mo. Nov. 28, 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Here, the Court finds it appropriate to begin by addressing the latter question. *LaCross*, 713 F.3d at 1158.

In *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), the Eighth Circuit Court of Appeals "considered whether a plaintiff's showing of 'only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment[,]' and concluded that it did

not." *LaCross*, 713 F.3d at 1158 (quoting *Chambers*, 641 F.3d at 906).[8] Instead, the Court determined that the appropriate inquiry was whether the force used to effect a particular seizure was reasonable. *Chambers*, 641 F.3d at 906. *Chambers* thus held that, "the excessive-force inquiry must focus on the force applied and *not* its end result, that is, the level of injury." *Robinson v. City of Minneapolis*, 2013 WL 3929043, at *3 (D. Minn. Jul. 30, 2013) (citation omitted); *see also Chambers*, 641 F.3d at 906 ("[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury*, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question.").

Viewing the facts in the light most favorable to the plaintiff, the *Chambers* court found that he had "presented sufficient evidence, if believed, to establish a violation of the Fourth Amendment." *Chambers*, 641 F.3d at 908. In other words, the Court held that the alleged use of "gratuitous" force, which included kicking and choking Chambers while he was restrained in a car on the way to the hospital, "was not reasonable under the circumstances." *Id.*

The Eighth Circuit did not end its inquiry there, however. Instead, it continued to consider whether, "the right that was violated was 'clearly established' at the time of the defendant's alleged misconduct." *Chambers*, 641 F.3d at 908 (citing *Pearson*, 129 S.Ct. at 816). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

> Generally speaking, of course, it was clearly established [at the time of the alleged use of excessive force] that an arrestee had a right to be free from the use of excessive force. It

---

[8] Plaintiff concedes in her briefing that the tasing at issue here caused only *de minimis* injury. (*See* Plaintiff's Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment, P. 12). *See also Wommack*, 2012 WL 5948922, at *16 (collecting cases) ("As of 2009, the Eighth Circuit Court of Appeals had held that in the absence of evidence of long-term effects, the use of a Taser does 'not inflict any serious injury'…").

was not clearly established, however, that an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury[9]....Given the state of the law [at the time of the incident], a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment. A reasonable officer was permitted to assume that legal conclusion when determining how to proceed, and he is entitled to have his conduct judged according to that standard for purposes of qualified immunity.

*Id.* (internal citations omitted). *See also Wommack*, 2012 WL 5948922, at *15 ("As of [the date of the incident, pre-*Chambers*], it was clearly established that excessive force may not be used against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public....However, what was not clearly established as of [the date of the incident] was whether force was considered excessive when it involved a tasing resulting in a *de minimis* injury.").

In the instant case, Hollingsworth does not dispute that Defendants had the right to detain her for allegedly stealing the wine coolers. Because Defendants had the right to detain Hollingsworth, they had the right to use some degree of force. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citation omitted) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). This right sets Hollingsworth's case apart from "cases in which, under the plaintiff's version of the facts, the officer did not have the right to make an arrest or otherwise detain the plaintiff." *See Mussa v. Abdulkadir*, 2013 WL 4780955, at *3 (D. Minn. Sep. 5, 2013) (distinguishing *Nguyen v. Lokke*, No. 11-CV-3225, slip. op. at 7 (D. Minn. Sept. 4, 2013) ("When there is no right to seize a citizen—that is, when there is no right to detain a citizen even momentarily—then there is also no right to use force against that citizen."), and

---

[9] Rather, as the Eighth Circuit noted in *Chambers*, "over the course of more than fifteen years,...[i]t...remain[ed] an open question in this circuit whether an excessive force claim require[d] some minimum level of injury." *Chambers*, 641 F.3d at 904 (internal quotation marks and citations omitted).

*Smith v. Appledorn*, No. 11-CV-2966, 2013 WL 451320, at *3 (D. Minn. Feb. 6, 2013) ("before a police officer can use physical force, the arrest or investigatory stop itself must be justified")). It further distinguishes Hollingsworth's case from *Hemphill v. Hale*, in which the Eighth Circuit held that because *no* use of force would have been reasonable in the officer's attempt to coerce Hemphill's consent to a warrantless search of his home, the force Hale allegedly used was objectively unreasonable. *See Hemphill v. Hill*, 667 F.3d 799, 801 (8th Cir. 2012) ("While in *Chambers* we stated that '[p]olice officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure,' *see id.* at 907, we agree with the district court that officers do not have the right to use any degree of physical force or threatened force to coerce an individual to consent to a warrantless search of his home.").

Having established that McCallum had the right to use some degree of force or threat thereof in the course of effecting the lawful seizure of Hollingsworth, the Court finds this case is squarely controlled by *Chambers*. In other words, although in both cases officers allegedly utilized excessive force at a time when the detainees were secured and not resisting, the Eighth Circuit in *Chambers* held that the officers there were entitled to qualified immunity due to the uncertainty in the law regarding *de minimis* injuries, and the same holds true for McCallum here. *See Wommack*, 2012 WL 5948922, at *16 (holding the officer's actions did not run afoul of the Fourth Amendment, as "pre-*Chambers*, it was not clearly established that an officer violated an arrestee's rights, no matter how much force was used, if he caused only *de minimis* injuries."). *See also Bishop v. Glazier*, 723 F.3d 957, 961-62 (8th Cir. 2013) (holding the distinction between *de minimis* force and *de minimis* injury was not clear until *Chambers* was decided, and that in fact some precedents in place at the time of the incident (pre-*Chambers*) suggested that, "the presence of only *de minimis* injuries may *preclude* a claim for excessive force."). Defendants'

Motion for Summary Judgment on Hollingsworth's § 1983 claim of excessive force against McCallum must therefore be granted. *Id.*

## II. Count II: 42 U.S.C. § 1983 Failure To Intervene Claim Against King And Mayberry

As noted above, Hollingsworth also brought a § 1983 claim against Defendants King and Mayberry, claiming they are liable for failing to intervene when McCallum utilized excessive force. If a reasonable officer in McCallum's position would not have known that he was using excessive force against Hollingsworth, however, then reasonable officers in King and Mayberry's positions would not have known they had a duty to intervene to protect her from that use of force. *See Mussa*, 2013 WL 4780955, at *4. Defendants King and Mayberry thus are entitled to qualified immunity as well. *Id.*

## III. Count IV: 42 U.S.C. § 1983 *Monell* Claim Against The City Of St. Ann

As noted above, in the final count of her Complaint Hollingsworth alleged the City of St. Ann must be held liable, as its policy permitted or encouraged the misconduct at issue. (Compl., ¶¶ 69, 70). Hollingsworth elaborated upon the nature of the allegedly unconstitutional policy at issue in her own Motion for Summary Judgment on Liability, as follows:

> In this case Officer Barrale, the taser trainer and self-described knowledgeable person about the City's taser policies, told us that at the relevant time it was the policy of the City of St. Ann to tase subjects in the jail who might become a threat but who had not become a threat yet. That policy is not constitutional, for as stated above the court in ***Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir. 2009)** [held] the suspect must pose "an *immediate* threat to the safety of the officers or others", emphasis added. Because it was the policy of the city to tase subjects who might only become a threat, and because Officer McCallum followed that policy, Plaintiff is entitled to Summary Judgment against the City of St. Ann. The policy caused the harm.

(Plaintiff's Memo in Support, P. 14).

Based on the foregoing, Hollingsworth apparently complains that an official City of St. Ann policy permitted officers to deploy their Tasers based on what a suspect might do in the

future. (*See* Plaintiff's Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, P. 5). Assuming without deciding that she is correct in this[10], the Court nevertheless finds summary judgment in favor of the City to be appropriate, as there is no indication that McCallum was acting pursuant to such policy when he tased Hollingsworth. Instead, in his Taser Report McCallum stated he deployed the Taser not because he thought Hollingsworth might become a threat at some point in the future, but "because of Hollingsworth's noncompliance." (*See* Defendants' Exh. D). McCallum testified consistently with this explanation during his deposition. (*See, e.g.*, McCallum Dep. 51:1-9, 62:1-5, 90:15-91:6).[11] Under these circumstances, Hollingsworth fails to demonstrate that "action pursuant to official municipal policy of some nature caused a constitutional tort," *Monell*, 436 U.S. at 691, and so this portion of Defendants' Motion for Summary Judgment must be granted. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013).

## **CONCLUSION**

Accordingly,

---

[10] As submitted by Hollingsworth, the only written policy in place at the time did not contain the above directive, instead stating only as follows:
> This device can be considered and utilized before the use of Pepper Spray when an encounter is of close proximity to do so safely. The charge from the unit shall be applied to the subject until resistance has ceased, or the subject complies with officer's commands, and the subject is no longer a threat. Any further use is not necessary nor permissible. Because a handcuffed, or restrained subject can still be non-compliant, or even a substantial threat, the use of a Stun Device may be permissible as discretion dictates.

(Plaintiff's Facts, ¶ 81; Plaintiff's Exh. 9).

[11] Specifically, McCallum testified as follows:
> Q   What was the primary purpose of your tasing?...
> A   To insure safety and—or compliance of the policies for regarding safety for herself, myself, and others in the facility.
> Q   So the purpose of her complying was for safety, correct?
> A   Correct.

(McCallum Dep. 90:15-22).

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 33) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 26th Day of February, 2014.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE